UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| NHUT THANH VO, | ) | No. SA CV 07-01410-FMC (VBK) |
| | ) | |
| Petitioner, | ) | MEMORANDUM AND ORDER DENYING |
| | ) | RESPONDENT'S MOTION TO DISMISS |
| v. | ) | |
| | ) | |
| ANTHONY HEDGPETH, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**INTRODUCTION**

Nhut Thanh Vo (hereinafter referred to as "Petitioner"), a California state prisoner represented by counsel, filed a "Petition for Writ of Habeas Corpus by a Person in State Custody," pursuant to 28 U.S.C. §2254 ("Petition"), on December 5, 2007. Respondent filed a Motion to Dismiss the Petition ("MTD"), contending that the Petition was barred by the one-year statute of limitation set forth in 28 U.S.C. §2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") on January 14, 2008. The Court issued a Minute Order on January 16, 2008 ordering Petitioner to file an Opposition or Statement of Non-Opposition. On February 19, 2008, Petitioner's counsel filed an Application for Extension of Time to

File an Opposition.  The Court granted the request and ordered that an Opposition be filed by March 18, 2008.  On March 17, 2008, Petitioner filed a "Second Application for Extension of Time to File an Opposition to the Motion to Dismiss."  The Court granted Petitioner's second request for an extension of time up to and including April 1, 2008.  On April 1, 2008, Petitioner filed a document entitled "Petitioner's Final Application for an Enlargement of Time to File Opposition to Motion to Dismiss."  On April 7, 2008, the Court granted Petitioner's request for an extension of time to file an Opposition up to and including April 15, 2008.  Petitioner filed an Opposition to Respondent's Motion to Dismiss on April 15, 2008.

On April 18, 2008, the Court issued a Minute Order ordering Respondent to file a Reply to Petitioner's Opposition within 20 days.

On April 25, 2008, Respondent filed a "Reply to Petitioner's Opposition to the Motion to Dismiss the Petition for Writ of Habeas Corpus."

On June 6, 2008, the Court issued a Minute Order ordering Petitioner's counsel under penalty of perjury to provide a list of all cases on which he was counsel of record during the period from July 1, 2007 through November 30, 2007 and evidentiary support of counsel's illness and incapacity.

On July 6, 2008, Petitioner filed a document entitled "Submission of List of Cases and Medical Records by Petitioner's Counsel per the Court's Minute Order Dated June 6, 2008."

On August 1, 2008, Respondent filed a "Response to Submission of Cases."

On August 14, 2008, the Court issued a Minute Order scheduling a hearing on the Motion to Dismiss for September 23, 2008.

On September 23, 2008, the Court held a hearing on Respondent's Motion to Dismiss. Counsel for Petitioner and Respondent were present and argument was heard. The Court ordered further briefing be filed no later than November 3, 2008.

On October 30, 2008, Respondent filed a document entitled "Further Briefing Regarding Motion to Dismiss."

On November 3, 2008, Petitioner filed a document entitled "Petitioner Nhut Vo's Supplemental Brief Re: Equitable Tolling in Opposition to Respondent's Motion to Dismiss."

Briefing having been deemed completed, the matter is now ready for decision. Having reviewed the Petition and the matters set forth in the MTD, Petitioner's Opposition, Respondent's Reply, Respondent's Supplemental Briefing, Petitioner's Supplemental Briefing and the records herein, it is **HEREBY ORDERED** that the Motion to Dismiss be denied.

## PRIOR PROCEEDINGS

On December 16, 2002, Petitioner was convicted by a jury in the Orange County Superior Court of two counts of first degree murder in violation of California Penal Code ("PC") §187(a), one count of attempted murder in violation of PC §§664, 187(a), and one count of assault with a semiautomatic firearm in violation of PC §245(b). (Respondent's Lodgment 1, 3 Clerk's Transcript ["CT"] 502-505, 514-516.) The jury found true weapon and criminal street gang enhancements as to each offense in violation of PC §§12022(a)(1), 186.22(b)(1). (3 CT 502-505, 514-516.) The jury also convicted Petitioner of a separate count of street terrorism in violation of PC §186.22(a). (3 CT 507, 516.)

On June 6, 2003, the trial court sentenced Petitioner to two consecutive terms of life without the possibility of parole for the murders; a consecutive term of life with the possibility of parole for the attempted murder; a consecutive term of six years for the assault; and a concurrent term of two years for street terrorism. (3 CT 598, 601.) The Court stayed sentence on the enhancements. (3 CT 598, 602.)

Petitioner and Respondent filed briefs in the California Court of Appeal. (Respondent's Lodgments 2, 3, 4.) Supplemental briefs were also filed by both parties. (Respondent's Lodgments 5, 6, 7.)

On April 28, 2005, the California Court of Appeal affirmed the judgment and conviction, but modified the sentence by striking the weapon and gang enhancements. (Respondent's Lodgment 8.)

Petitioner filed a Petition for Review in the California Supreme Court. (Respondent's Lodgment 9.) The California Supreme Court denied the Petition for Review on August 10, 2005. (Respondent's Lodgment 10.)

At the same time that his direct appeal was still pending, Petitioner filed a Petition for Writ of Habeas Corpus in the Orange County Superior Court on May 16, 2005. (Respondent's Lodgment 11.) The Orange County Superior Court denied the petition on July 14, 2005. (Respondent's Lodgment 12.)

On August 15, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in the California Court of Appeal. Respondent filed a Response to the Petition. Petitioner filed a Reply. (Respondent's Lodgments 13-15.) On June 30, 2006, the California Court of Appeal denied the petition. (Respondent's Lodgment 16.)

On August 1, 2006, Petitioner filed a Petition for Review in the California Supreme Court. (Respondent's Lodgment 17.) The California

1   Supreme Court denied the petition on September 13, 2006. (Respondent's
2   Lodgment 18.)
3        The within Petition was filed on December 5, 2007.
4
5                           **PETITIONER'S CONTENTIONS**
6        Petitioner contends the following, <u>inter alia</u>:
7   1.   Petitioner was denied the right to due process by delay in
8        charging him with the crimes (<u>United States v. Marion</u>, 404
9        U.S. 307 (1971));
10  2.   Petitioner was denied effective assistance of counsel as
11       guaranteed under the Sixth Amendment to the United States
12       Constitution; and
13  3.   Petitioner's sentence is unconstitutionally cruel in
14       violation of the Eighth and Fourteenth Amendments to the
15       United States Constitution.
16  (<u>See</u> Petition at 5-6; attached pages 1-35.)
17
18                                **DISCUSSION**
19       In the Motion to Dismiss, Respondent contends that the Petition
20  should be dismissed on the grounds that the Petition is untimely.
21
22  **A.   The Petition Is Facially Untimely**.
23       Since the Petition was filed after the President signed into law
24  the Antiterrorism and Effective Death Penalty Act of 1996 (the
25  "AEDPA") on April 24, 1996, the Court's consideration of the
26  Petition's timeliness is governed by 28 U.S.C. §2244(d), as amended by
27  the AEDPA.   <u>See Calderon v. United States District Court for the</u>
28  <u>Central District of California (Beeler)</u>, 128 F.3d 1283, 1287 n.3 (9th

1  Cir. 1997), <u>cert.</u> <u>denied</u>, 522 U.S. 1099 and 523 U.S. 1061 (1998).[1]

2  That section provides:

3      "(1) A 1-year period of limitation shall apply to an

4  application for a writ of habeas corpus by a person in custody

5  pursuant to the judgment of a State court.  The limitation period

6  shall run from the latest of--

7          (A)  the date on which the judgment became final by

8      conclusion of direct review or the expiration of the time

9      for seeking such review;

10         (B)  the date on which the impediment to filing an

11     application created by State action in violation of the

12     Constitution or laws of the United States is removed, if the

13     applicant was prevented from filing by such State action;

14         (C)  the date on which the constitutional right

15     asserted was initially recognized by the Supreme Court, if

16     the right has been newly recognized by the Supreme Court and

17     made retroactively applicable to cases on collateral review;

18     or,

19         (D)  the date on which the factual predicate of the

20     claim or claims presented could have been discovered through

21     the exercise of due diligence.

22     (2)  The time during which a properly filed application for

23  State post-conviction or other collateral review with respect to

24  the pertinent judgment or claim is pending shall not be counted

25  toward any period of limitation under this subsection."

26  _____

27      [1]    <u>Beeler</u> was overruled on other grounds in <u>Calderon v. United</u>

28  <u>States District Court (Kelly)</u>, 163 F.3d 530, 540 (9th Cir. 1998)(en
    banc), <u>cert.</u> <u>denied</u>, 119 S. Ct. 1377 (1999).

1    In most instances, a state prisoner's AEDPA limitations period

2  will be governed by §2244(d)(1)(A).  It is only in "rare instances"

3  that, pursuant to §§2244(d)(1)(B)-(D), "the limitation period may run

4  from a date later than the date on which judgment becomes final."

5  Baker v. State of California, 2000 WL 74071 at *1 (N.D. Cal. 2000).

6  In the Motion to Dismiss, Respondent contends that the running of the

7  limitations period in this case is governed by §2244(d)(1)(A).

8

9        **1.   Application Of §2244(d)(1)(A) Renders The Petition**

10            **Facially Untimely**.

11   Under §2244(d)(1)(A), the statute began to run at the completion

12  of direct review in the state courts.  Here, the California Supreme

13  Court denied the Petition for Review on August 10, 2005. (Respondent's

14  Lodgment 10.)  Consequently, the judgment became final ninety days

15  later on November 8, 2005.  See Bowen v. Roe, 188 F.3d 1157, 1158-59

16  (9th Cir. 1999).

17   Therefore, without tolling, the last date for Petitioner to file

18  his  federal  petition  was  November  8,  2006.   See  28  U.S.C.

19  §2244(d)(1)(A); Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir.

20  2001)(for a petition that became final before the effective date of

21  AEDPA, federal courts allowed one year from the effective date of

22  AEDPA, which was April 24, 1996).  The Petition filed on December 5,

23  2007 was filed almost one year after the statute of limitations

24  expired and is facially untimely, absent statutory or equitable

25  tolling.

26

27       **B.   Statutory Tolling Still Does Not Render The Petition Timely**.

28   The running of the AEDPA's one-year time limitation is tolled for

the time period during which a properly filed application for post-conviction or other state collateral review is pending in state court. See 28 U.S.C. §2244(d)(2); Duncan v. Walker, 531 U.S. 991, 121 S. Ct. 2120 (2001)(The statutory term "other collateral review" refers to other state collateral review).  The statute is tolled from "the time the first state habeas was filed until the California Supreme Court rejects the petitioner's final collateral challenge." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.), cert. denied, 529 U.S. 1104, 120 S. Ct. 1846 (2000); accord, Welch v. Newland, 267 F.3d 1013 (9th Cir. 2001).

Statutory tolling under AEDPA may include the time between properly filed state petitions, so long as the prisoner is attempting, "through proper use of state court procedures," to exhaust his state court remedies.  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999); accord, Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 2138, 153 L.Ed. 2d 260 (2002).  Such "gap tolling," however, is available only insofar as a petitioner is pursuing "one complete round of the state's established appellate review process." Nino, 183 F.3d at 1005; see also Carey, 122 S.Ct. at 2138; Dils v. Small, 260 F.3d 984, 986 (9th Cir. 2001).

Following Nino, and in a manner consistent with the United States Supreme Court's decision in Carey, the Ninth Circuit has declined to grant statutory tolling for the interval periods between state court petitions when the petitioner files successive habeas petitions or when petitioner repeats or regresses in the hierarchy of state appellate review.  See also Dils v. Small, 260 F.3d 984, 986 (9th Cir. 2001)(no gap tolling accorded between successive California Supreme Court habeas petitions).

1    Although a petitioner is entitled to statutory tolling while he
2    completes one full round of collateral review, <u>Carey v. Saffold</u>, 536
3    U.S. 214, 222 (2002), a petitioner begins a separate round of review,
4    however, "each time [he] files a new habeas petition at the same or
5    lower level" of the state court system.   <u>Delhomme v. Ramirez</u>, 340 F.3d
6    817, 820 (9th Cir. 2003).   There is no statutory tolling for the period
7    between sets of state habeas petitions.   <u>Biggs v. Duncan</u>, 339 F.3d
8    1045, 1046-47 (9th Cir. 2003).

9    Tolling occurs when a petitioner is properly pursuing post-
10   conviction state collateral review.   28 U.S.C. §2244(d)(2).   The
11   filing of the Petition for Writ of Habeas Corpus in the Orange County
12   Superior Court (Respondent's Lodgments 11 and 12) has no effect on the
13   tolling of the statute of limitations because the statutory time
14   period had not yet commenced.   The Orange County Superior Court denied
15   the Petition for Writ of Habeas Corpus on July 14, 2005.

16   Petitioner then filed a Petition for Writ of Habeas Corpus in the
17   California Court of Appeal on August 15, 2005, which was denied on
18   June 30, 2006.   Meanwhile, direct review ended on November 8, 2005.
19   The statute of limitations was therefore tolled from November 8, 2005
20   until June 30, 2006.   It was further tolled until September 13, 2006
21   when the California Supreme denied Petitioner's Petition for Writ of
22   Habeas Corpus.   Thus, granting Petitioner statutory tolling, he had
23   until September 13, 2007 to file a federal petition for writ of habeas
24   corpus.   The within Petition was filed approximately 83 days after the
25   statute of limitations expired. The Petition is therefore untimely
26   absent equitable tolling.

27   //

28   //

C.   **Petitioner Is Entitled To Relief Based On Equitable Tolling.**

1.   **Factual Contentions**.

Petitioner contends he is entitled to equitable tolling based on his attorney's failure to timely file his federal petition due to his attorney's illness.   Petitioner's counsel, E. Thomas Dunn, Jr., attached a Declaration to the Petition indicating that he was ill during the summer and fall of 2007.   Mr. Dunn states that in July he became ill but recovered in two weeks.   In early August, he became extremely ill and did not immediately recover.   Mr. Dunn developed breathing and kidney problems and essentially became incapacitated and unable to work or move around.[2]   Mr. Dunn states that he became extremely depressed and developed blood pressure problems, and it took him until the end of November to recover sufficiently to be up and around and able to work again.   Mr. Dunn alleges that due to his illness he was unable to do Petitioner's work and was unable to call or contact Petitioner to advise him of his illness. (Declaration of E. Thomas Dunn, Jr. attached to Petition at ¶ 2.)

Petitioner's counsel also attached to the Opposition to Motion to Dismiss a second Declaration from him and a Declaration from Robert W. Bligh.   In Mr. Dunn's Declaration, he states he first spoke to Petitioner's family in December 2006 about the possibility of filing

-----

[2]   On August 10, 2007, Petitioner's counsel was first seen by Dr. Carlos Sobral, who noted that counsel suffered from "severe depression and hypertension as well as asthma, allergies, high cholesterol, sleep disorder and a great amount of stress." Dr. Sobral noted when counsel was seen on October 4, 2007, his depression was still not resolved.   Dr. Sobral noted that "between August 10, 2007 and November 30, 2007 ... [counsel] was not able to do his regular job during this time period." (See "Submission of List of Cases and Medical Records by Petitioner's Counsel per the Court's Minute Order dated June 6, 2008 - Dr. Sobral's letter dated July 2, 2008..

a federal habeas petition. At that time, the family agreed to retain him and he agreed to do the necessary work. Mr. Dunn states he was formally retained in April of 2007 and began his review of Petitioner's case. Mr. Dunn states that all of the research and case review for the federal petition had been completed by the end of June 2007, and what remained was for him to draft and file the petition. (Opposition to MTD, Declaration of E. Thomas Dunn, Jr. at p. 5, ¶ 2.) Mr. Dunn states he suddenly became ill in July 2007, fighting kidney disease and later pneumonia. Mr. Dunn states he also began suffering from increasingly severe depression. (Id. at ¶ 3.)

Mr. Dunn alleges when he first became ill in July 2007, he asked a friend, Robert. W. Bligh, to assist him in answering telephone calls, picking up mail, serving and filing documents and running various errands. (Id. at ¶ 4.)

Mr. Dunn states from July through November 2007, he was seriously ill and for the majority of time was unable to function. Mr. Dunn states although he was able to complete some work while he was ill, for the most part he was unable to focus his attention on pending cases. (Id. at ¶ 5.)[3]

In Mr. Bligh's Declaration, he states he began working for Mr. Dunn in July 2007 because Mr. Dunn was ill and having health problems.

---

[3]   The Court notes that during the period from July 1, 2007 through November 30, 2007 Petitioner's counsel was counsel of record in 13 cases. In 5 of the 13 cases, counsel filed nothing at all during the period in question. In 2 other cases, counsel filed nothing but requests for extensions of time. In the remaining cases, counsel filed 2 reply briefs and 3 opening briefs and several requests for extension of time which according to counsel were necessitated primarily due to counsel's health. (See "Submission of List of Cases and Medical Records by Petitioner's Counsel per the Court's Minute Order Dated June 6, 2008.")

1  (Declaration of Robert W. Bligh at p. 8, ¶ 2.)  In August of 2007, Mr.

2  Bligh agreed to continue working for Mr. Dunn. (Id. at ¶ 3.)  Mr.

3  Bligh received telephone calls in late August and early September from

4  Ms. Kim Vo, Petitioner's sister, who wanted to know the status of

5  Petitioner's case.  Mr. Bligh advised Ms. Vo that Mr. Dunn was ill and

6  unavailable but that he would check the file to find out the status of

7  the case.  Mr. Bligh was able to locate Petitioner's files with notes

8  made by Mr. Dunn, which included a list of tasks to be completed and

9  indications of what work had been done.  Those notes indicated that

10  "all the necessary briefs had been filed" and "habeas research [was]

11  complete."  Mr. Bligh informed Ms. Vo she could tell Petitioner the

12  case was under control.  <u>The paperwork appeared to be complete and all</u>

13  <u>necessary briefs had been filed.</u>  (Emphasis added.)  Ms. Vo asked Mr.

14  Bligh whether he could send her and Petitioner copies of the

15  documents.  Mr. Bligh said he was helping out in the office

16  temporarily but would have Mr. Dunn send out copies when he returned.

17  (Declaration of Robert W. Bligh at pp. 8-9, ¶ 4.)

18      During the last week of November 2007, Petitioner's counsel

19  returned to work.  At that time, he met with Petitioner's family and

20  advised them for the first time that due to his illness, he had been

21  unable to complete the federal petition but that it would be filed

22  immediately.  The family thereafter advised Petitioner, during a

23  family visit at the prison, that the Petition had been delayed and

24  would be filed soon.[4] (Opposition to MTD, Declaration of E. Thomas

25  _____

26      [4]    The Court notes there is a slight difference between the
   declarations submitted by counsel with the Petition and the Opposition
27  to MTD.  In the Declaration filed with the Petition, counsel stated he
   became ill in July and recovered in two weeks.  He became ill again in
28                                                    (continued...)

1  Dunn, Jr. at ¶ 7.)

2

3           **2.  <u>Applicable Federal Law</u>**.

4       The AEDPA's one-year statute of limitations is subject to

5  equitable tolling but only if a petitioner can show "'(1) that he has

6  been pursuing his rights diligently, and (2) that some extraordinary

7  circumstance stood in his way' and prevented timely filing." <u>Lawrence</u>

8  <u>v. Florida</u>, 549 U.S. 327, 127 S.Ct. 1079, 1085 (2007)(quoting <u>Pace v.</u>

9  <u>Diguglielmo</u>, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669

10 (2005)).  <u>See also</u> <u>Irvin v. Department of Veteran Affairs</u>, 498 U.S.

11 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).  Petitioner bears the

12 burden of alleging facts that would give rise to tolling.  <u>Pace</u>, 544

13 U.S. at 418; <u>Smith v. Duncan</u>, 297 F.3d 809 (9th Cir. 2002); <u>Hinton v.</u>

14 <u>Pac. Enters.</u>, 5 F.3d 391, 395 (9th Cir. 1993).

15      Equitable tolling is "unavailable in most cases," <u>Miles v.</u>

16 <u>Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999), and the "threshold

17 necessary to trigger equitable tolling is very high lest the

18 exceptions swallow the rule." <u>Miranda v. Castro</u>, 292 F.3d 1063, 1066

19 (9th Cir. 2002) (quoting <u>United States v. Marcello</u>, 212 F.3d 1005, 1010

20 (7th Cir. 2000); <u>Brambles v. Duncan</u>, 330 F.3d 1197, 1201 (9th Cir.

21 2003); <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003); <u>see</u>

22

23 _____

        [4](...continued)
24 early August and did not immediately recover.  Counsel stated that
   although he was unable to contact Petitioner to advise him of his
25 illness, Petitioner did make "futile efforts" to contact counsel. (<u>See</u>
   Petition, Declaration of E. Thomas Dunn, section 2.)
26      In the Declaration attached to the Opposition to Motion to
   Dismiss, counsel does not state that he recovered in two weeks in the
27 first instance.  Counsel also does not state that Petitioner made
   "futile efforts" to contact him while counsel was ill. (<u>See</u> Opposition
28 to MTD - Declaration of Dunn at pp. 4-5.)

<u>Calderon v. United States District Court for the Central District of</u> <u>California (Beeler)</u>, 128 F.3d at 1288 (noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." "[W]hen external forces rather than a petitioner's lack of diligence account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." <u>Lott v. Mueller</u>, 304 F.3d 918, 922 (9th Cir. 2002)(quoting <u>Miles</u>, 187 F.3d at 1107).

In <u>Allen v. Lewis</u>, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2nd Cir. 2000) (holding that the prisoner is required to "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing"); <u>Marsh v. Soares</u>, 223 F.3d 1217, 1221 (10th Cir. 2000)(rejecting equitable tolling claim because, even if temporary closure of prison library constituted extraordinary circumstances, "prisoner has not shown how this lack of access caused his delay in filing"); <u>Fischer v. Johnson</u>, 174 F.3d 710, 715-716 (5th Cir. 1999)(rejecting equitable tolling claim because prisoner still had over six months to complete his federal habeas petition after his return to his usual quarters"). The Ninth Circuit reaffirmed this rule in <u>Espinoza- Matthews v. California</u>, 432 F.3d 1021, 1026 (9th Cir. 2005). In that case, the Court pointed out that the determination vis-a-vis equitable tolling is "highly fact-dependent" (citing <u>Whalen/Hunt v. Early</u>, 233 F.3d 1146, 1148 (9th Cir. 2000) and that the petitioner "bears the burden

1  of showing that equitable tolling is appropriate" (citing <u>Gaston v.</u>

2  <u>Palmer</u>, 417 F.3d 1030, 1034 (9th Cir. 2005).)

3      It is clear that ordinary negligence on the part of counsel is

4  not an extraordinary circumstance warranting equitable tolling.  <u>See</u>,

5  <u>Lawrence</u>, 127 S.Ct. at 1085 ("Attorney miscalculation [of AEDPA's

6  limitation] is simply not sufficient to warrant equitable tolling,

7  particularly in the post-conviction context where prisoners have no

8  constitutional right to counsel.").  The prisoner must show that the

9  "extraordinary circumstances" were the cause of his untimeliness.

10  <u>Stillman v. La Marque</u>, 319 F.3d 1199, 1203 (9th Cir. 2003)(Petitioner

11  entitled to equitable tolling "since prison officials' misconduct

12  proximately caused the late filing"); <u>Miranda v. Castro</u>, 292 F.3d

13  1063, 1066 (9th Cir. 2002)(Appellate counsel's mistake regarding habeas

14  corpus statute of limitations does not warrant equitable tolling);

15  <u>Frye v. Hickman</u>, 273 F.3d 1144, 1146 (9th Cir. 2001)(Petitioner not

16  entitled to equitable tolling due to miscalculation of AEDPA statute

17  of limitations and attorney negligence),[5] <u>Spitsyn v. Moore</u>, 345 F.3d

18  796, 799 (9th Cir. 2003)).[6]  In <u>Spitsyn</u>, the Ninth Circuit held that

19

20      [5]  <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 1055 S.Ct. 830, 83
    L.Ed.2d 821 (1985).  Under the Due Process Clause of the Fifth
21  Amendment, an appellant has the right to representation by effective
    counsel in his or her direct appeal.  <u>See</u> <u>Pollard v. White</u>, 119 F.3d
22  1430, 1435 (9th Cir. 1997)("The Due Process Clause guarantees a
    criminal defendant effective assistance of counsel on his first appeal
23  as of right.").  However, in non-capital cases there is no right to
    counsel on a habeas proceeding.  <u>Knaubert v. Goldsmith</u>, 791 F.2d 722
24  (9th Cir. 1986).

25
26      [6]  In both <u>Spitsyn</u> and <u>Baldayaque v. United States</u>, 338 F.3d
    145 (2nd Cir. 2003), the Courts held that attorney malfeasance without
27  more is not sufficient to warrant equitable tolling.  <u>Spitsyn</u> holds
    that egregious attorney misconduct may justify equitable tolling but
28  also requires District Courts to examine the petitioner's due
                                                    (continued...)

1  the conduct of the inmate's attorney was sufficiently egregious to

2  justify equitable tolling of the one-year limitation period.  The

3  attorney was hired nearly a full year in advance of the deadline, and

4  he completely failed to prepare and file a petition.  Id. at 798-99.

5  The inmate, in addition to his family members, contacted the attorney

6  numerous times, by telephone and in writing, but the efforts were

7  fruitless.  Id.  Despite a request that the attorney return the

8  inmate's file, the attorney retained it for the duration of the

9  limitations period and more than two months beyond.  Id.  The court

10  held that the Spitsyn attorney's conduct was so deficient as to

11  distinguish it from the merely negligent performance of counsel.  Id.

12  at 801-02.  After concluding that the attorney's conduct constituted

13  "extraordinary circumstances," the Spitsyn court then remanded the

14

15            6(...continued)

16  diligence in pursuing the matter under the specific circumstances he
    faced.  Spitsyn, 345 F.3d at 802.  Likewise, Baldayaque holds that an
17  attorney's conduct, if it is sufficiently egregious, may constitute
    the sort of "extraordinary circumstance" that would justify the
18  application of equitable tolling.  Baldayaque, 338 F.3d at 152-153.
    Baldayaque, however, expressly states that the presence of
19  extraordinary circumstances "is not enough" - a petitioner "must also
    show that he acted with reasonable diligence and that the
20  extraordinary circumstances caused his petition to be untimely."  Id.
    at 153.  In other words, neither Spitsyn not Baldayaque holds that
21  attorney malfeasance, standing alone, warrants equitable tolling. (See
    also Welch v. Carey, 350 F.3d 1079, 1083 (9th Cir. 2003)(en
22  banc)("Tolling accommodates effort, not inaction."), cert. denied, 541
    U.S. 1078, 124 S.Ct. 2423 (2004); Schleuter v. Varner, 384 F.3d 69,
23  76-77 (3rd Cir. 2004)(no equitable tolling when counsel informed
    petitioner he anticipated filing habeas petition by year's end, but
24  did not do so; petitioner could have learned about attorney's failure
    before statute of limitations ran); Lindsey v. Carroll, 421 F.Supp.2d
25  806, 812 (D. Del. 2006)(Petitioner not entitled to equitable tolling
    due to attorney's failure to file post-conviction application for
26  relief when attorney represented she would file such motion and
    petitioner never sought to ascertain whether attorney had filed
27  motion).

28

1  case to the district court to determine "whether Spitsyn [himself]

2  exercised reasonable diligence." <u>Id</u>. at 800, 802.

3

4      **3.  <u>Analysis</u>.**

5      Here, as in <u>Spitsyn</u>, Mr. Dunn was hired specifically to prepare

6  and file a federal habeas corpus petition on Petitioner's behalf.

7  Despite Petitioner and his family's attempts to insure that a petition

8  was timely filed, Mr. Dunn failed to timely file the petition.  While

9  Petitioner's counsel was ill, he had a friend, Robert W. Bligh, help

10 out by answering telephone calls. (Opposition to MTD, Declaration of

11 E. Thomas Dunn, Jr. at  p. 6.)  In a call from Petitioner's sister,

12 Mr. Bligh states that he told Petitioner's sister, in terms that would

13 not alarm her, that Mr. Dunn was ill. (Opposition to MTD, Declaration

14 of Robert W. Bligh at  p. 8.)  What was exactly said is not stated.

15 Nor is there any indication that Mr. Bligh relayed to Mr. Dunn that

16 Petitioner's sister had called.  Mr. Bligh declares that he read a

17 note which indicated "<u>all the necessary briefs had been filed</u>" and

18 "<u>habeas research [was] complete</u>."  (Emphasis added.)  Mr. Bligh

19 relayed this information to Petitioner's sister and informed her that

20 she could tell Petitioner the case was under control, that all the

21 paperwork appeared to be complete and that all necessary briefs had

22 been filed. (Opposition to MTD, Declaration of Robert W. Bligh at  pp.

23 8-9.)

24      This is not a case in which Petitioner's counsel miscalculated

25 the dates or committed an intentional or negligent act.  No one acted

26 with improper motives.  Rather, Petitioner's counsel was physically

27 and mentally unable to act at the time the petition was due or

28 communicate with Petitioner.  Additionally, the information provided

17

by Mr. Bligh to Petitioner's sister was information Mr. Bligh believed to be correct based on his reading of the file.   These facts are extraordinary beyond Petitioner's control and beyond his knowledge.

The issue presented here is simply whether Petitioner should be held responsible for the untimely filing of his federal habeas petition when he had no reason to suspect it was not being filed within the time allowed by law and had in fact been assured that it was being filed within that time.   The record is clear that Petitioner inquired about the status of his case through his sister Ms. Vo.   Ms. Vo was assured, twice, that the petition was being handled and there was nothing to be concerned about.   Petitioner acted with due diligence in attempting to ensure that his Petition was timely filed.

Under such circumstances, penalizing Petitioner, who had taken appropriate steps to retain the services of an experienced professional and made inquiries about his case's status before the filing deadline, would amount to a gross unfairness and injustice.[7]

Given the information that was communicated to him, Petitioner, a maximum security prisoner serving a sentence of life without the

---

[7] Spitsyn, 345 F.3d at 801-02; see also Fonseca v. Hall, 568 F.Supp.2d 1110 (C.D. Cal. 2008)(attorney's failure, despite the attempts of habeas petitioner and his family to track his progress, to timely file state prisoner's habeas corpus petition on prisoner's behalf constituted egregious attorney misconduct warranting equitable tolling); Fleming v. Evans, 481 F.3d 1249, 1256 (10th Cir. 2007)(equitable tolling may be warranted when petitioner's mother hired attorney to represent petitioner in post-conviction proceedings, petitioner contacted counsel on several occasions to check on the status of his petition and was repeatedly assured that a petition was forthcoming); United States v. Martin, 408 F.3d 1089, 1094 (8th Cir. 2005)(equitable tolling appropriate when attorney consistently lied to petitioner and his wife about filing deadline and the status of petitioner's case, refused to communicate with petitioner or his family and neglected to file any documents on petitioner's behalf despite being requested to do so.)

1  possibility of parole, had no reason to believe that the lawyer

2  retained by his family was having any trouble completing tasks

3  associated with the filing of his petition or that he might need to

4  undertake the work himself or seek other counsel to assist him.  As

5  such, Petitioner is entitled to equitable tolling.

6

7                                  **ORDER**

8          For all the foregoing reasons, **IT IS HEREBY ORDERED** that (1)

9  Respondent's Motion to Dismiss on untimeliness grounds is denied; and

10  (2) Respondent is ordered to file an Answer to the Petition addressing

11  the merits of the claims within 30 days of the date of this Order.

12  Petitioner may then, if he wishes, file a Reply 30 days thereafter.

13

14  DATED: May 18, 2009              _____/s/_____

                                     VICTOR B. KENTON
15                                   UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28